400 P.2d 342

**Lawrence H. WATKINS and Helen V. Watkins, his wife, Appellants,**

**v.**

**W. F. BADBERG and Lillie I. Badberg, his wife, Sonya Rothschild, Bernard Gross and Gabriella Gross, his wife, and Associated Investment, an Arizona corporation, Appellees.[*]**

**I CA–CIV 59.**

Court of Appeals of Arizona.

April 5, 1965.

Rehearing Denied May 5, 1965.

Review Denied June 2, 1965.

---

[*] This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7931. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Connors & Corbin, by Stephen W. Connors, Vern E. Gasser, Phoenix, for appellants.

Moore, Romley, Kaplan, Robbins & Green, by Philip A. Robbins, Phoenix, for appellees.

STEVENS, Chief Judge.

In the Superior Court the appellees herein were the plaintiffs. They filed suit against the appellants seeking recovery on a $19,000 promissory note dated August 20, 1957. Judgment was entered for the face amount of the note together with interest and attorneys fees on November 20, 1962. An amended judgment was entered on February 5, 1963. After the denial of a motion for new trial, the defendants appealed from both judgments.

In this opinion the appellants, who were the defendants below, will be referred to as The Watkins. The appellees will be referred to as The Badberg Group.

The complaint set forth the note, pleading the same in words and figures, and alleged both non-payment and demand. The answer admitted these allegations and pleaded a novation as well as other matters. The file reflects a request for admissions and the answers thereto.

The Badberg Group rested without the introduction of any evidence, their attorney stating to the court,

"Mr. Robbins: Under the state of the pleadings, I see no necessity to even introduce the note in evidence. In addition to it being admitted in the pleadings, *requests for admissions were served upon the defendants* in which the answers again admitted the execution and nonpayment of the note. There being no issue in the pleadings, the plaintiffs will stand on the pleadings as they now stand with the admissions contained therein." (emphasis supplied)

The Watkins offered a copy of the trust agreement into evidence and the same was received without objection. The Watkins then attempted to introduce evidence relative to the historical background in relation to the note and the trust agreement and all of the offers made by them were objected to, the objections being sustained.

At least a portion of the historical background was before the trial court by reason of counsel's statement wherein he referred to the request for admissions and the answers thereto. After the several unsuccessful attempts to introduce background evidence, there was a conference between the court and counsel and the record discloses that following the conference the attorneys agreed that the trust agreement was unambiguous. The record reflects that while the attorneys agreed that the trust agreement was unambiguous, they strenuously disagreed as to the proper interpretation

thereof. There being no objection to the receipt of the copy of the trust agreement into evidence, we concluded that there can be no question but that The Badberg Group were signatories to the agreement. The trust agreement recited several categories of the parties to the agreement, these being:

The beneficiaries including The Badberg Group; the trustee; the third parties; and in a separate unnamed category, The Watkins.

The trust agreement recited, in part:

"Beneficiaries above named have Mechanics' and Materialmen's Liens and *other claims against* that certain property * * *." (emphasis supplied)

The third parties:

"have agreed to pay the Beneficiaries under this agreement a sum equal to fifty per cent (50%) of their claim for labor and materials furnished on the above described property."

"The above described claim of the Beneficiaries herein, which claim is fifty per cent (50%) of their *lien claim* on the property described herein is declared to be held in trust by the Trustee * * *. That the Trustee hold and will hold title to said claim in trust for the purpose of collecting said claims * * *" from the third parties. (emphasis supplied)

The Barberg Group's interest in the trust was set forth in the sum of $11,744.

Summarizing a portion of the historical background contained in the request for admissions and the answers thereto it appears that:

On August 20, 1957 The Watkins executed and delivered to The Badberg Group the note in question and secured the same by a mortgage on the real property described in the trust agreement which mortgage was duly recorded on August 29, 1957.

The Watkins commenced construction on the property and the material suppliers not being paid, liens were filed.

Southwest Mortgage Company held a mortgage superior to the mortgage given by The Watkins to The Badberg Group. Southwest filed a foreclosure action on January 15, 1959 joining as defendants the lien claimants, The Badberg Group and The Watkins. The Badberg Group cross-claimed in the mortgage foreclosure action against The Watkins, the basis of the cross-claim being the nonpayment of the note in question and in the cross-claim they sought to foreclose the mortgage which was recorded August 29th.

In November 1959 there was a conference between at least some of the parties to the foreclosure action.

In the request for admissions The Badberg Group asked that The Watkins admit that The Badberg Group was neither present nor represented at the conference and The Watkins declined to so admit.

At the meeting a plan was worked out whereby, in addition to other matters, The Watkins were to convey to Southwest and Southwest was to give a note and mortgage to the Trustee in the total sum of fifty per cent (50%) of the claims, each being specifically listed in the trust agreement which sum included the figure of $11,744 for the benefit of The Badberg Group.

The Badberg Group requested that The Watkins admit that The Badberg Group refused to join in the trust agreement but did agree to release the mortgage recorded on August 29th without releasing or discharging their claim against The Watkins. This The Watkins declined to admit. (As before indicated, this Court must assume that The Badberg Group executed the trust agreement and the record before us fails to disclose that there was any writing presented to the trial court to support this variance from the terms of the trust agreement.) The trust agreement was executed on December 13, 1958. On January 8, 1959 the mortgage which had been recorded on August 29, 1957 was released by The

· Badberg Group and on the same date the
· Southwest mortgage foreclosure together
· with the cross-claim were dismissed without prejudice.

In the light of these matters, it is the opinion of this Court that the above quoted portions of the trust agreement contain language which if it does not clearly refer to the note in question and its former mortgage security, at least presents a situation wherein The Watkins should have been permitted to present testimony to prove that the "other claims" and the "lien claim" (recited in the trust agreement) embraced the note and mortgage which they gave to The Watkins in the year 1957.

This cause is reversed and remanded for a new trial and both judgments are hereby vacated.

CAMERON and DONOFRIO, JJ., concur.